Rose, J.,
dissenting:
I dissent from the majority because I find that clear and convincing evidence exists to support the panel’s findings that on several occasions Drakulich violated a number of the Nevada Rules of Professional Conduct by splitting his attorney’s fees with Hall. Hall was employed by the Reno Orthopedic Clinic as a bill collector and had continual access to individuals injured in accidents. In reviewing this case de novo, the majority has chosen to accept Drakulich’s explanation of why and how payments were made to Hall. I, however, do not. Accordingly, I would support the panel’s recommendation to impose a ninety day suspension on Drakulich.
The majority concludes that clear and convincing evidence did not exist to support the finding of the board and chooses to reject the panel’s finding. Drakulich contends, and the majority apparently agrees, that his testimony was “completely uncontra-dicted.” I disagree. They base this primarily on Drakulich’s testimony that he never agreed to pay Hall any part of the fees he earned in cases that Hall referred to his office. Additionally, the majority focuses on Drakulich’s testimony that he did not charge *1573 Hall’s services to the clients because “a lot of it was basically finding work for Harold to do.”
Drakulich also testified that Hall did not submit bills for his services because Hall was not a licensed investigator and stated that the only way he could have Hall do anything for his cases, “other than people he would know and that he would be able to contact, he would have to either be employed by my office, which I didn’t want to do, or he would have to go ahead and go formally with another investigative agency.” However, I believe that other evidence clearly shows that Drakulich was guilty of fee-splitting with Hall.
In the initial hearing, testimony from Muriel Skelly and Jan Marie Stellmach provided clear and convincing evidence of Drakulich’s fee-splitting with Hall. Both were secretaries for Drakulich at the time, and Skelly is now a member of the State Bar of Nevada. Skelly testified that once a week Hall would call the office to give the names of clients “he had told to get in touch with us.” She testified that, to her knowledge, Hall did not perform investigative services or asset checks for Drakulich and that she never saw bills submitted by Hall for such services. This indicates to me that Hall was being compensated for referrals rather than investigative services. Additionally, she testified that Drakulich told her that Business and Professional Collection services performed asset checks because they were a client. However, Drakulich flatly denied using Business and Professional Collection agency to perform asset checks and had the owner of the agency testify to the same.
Stellmach’s testimony also indicated that Hall received a share of attorney’s fees from Drakulich. Stellmach testified that she heard Drakulich say that Hall referred cases over and got a ten percent referral fee for those services. Stellmach testified that in the Griffey/Sabatini case, she wrote a check to Hall at Drakulich’s direction equaling ten percent of the fees Drakulich collected in the case. Stellmach’s testimony also indicated that Drakulich told her that Hall would be given a ten percent referral fee on the Colfer case, although the check given to Hall prior to final settlement indicated that it was for investigative services. In the Neff case, Hall was paid approximately nine percent of Drakulich’s fee.
The majority argues that the fact that “on occasion the payments to Hall equaled or approximated ten percent of appellant’s fee does not alter the essential nature of the payments or their purpose.” I disagree. In light of the testimony of Skelly and Stellmach, this represents to me clear and convincing evidence that Hall was improperly receiving a percentage of Drakulich’s attorney’s fees.
*1574 Stellmach also testified that to her knowledge, Hall never performed the type of investigative services that Drakulich claims he performed. However, all checks to Hall, Drakulich told Stellmach, were to include the notation, “investigative services.” Investigative services performed by other entities were recorded in the “costs advanced column” of the ledger and eventually charged against the client. However, Stellmach indicated that payments to Hall were treated differently. Payments were not recorded as a cost advance and were not charged against the client but instead were deducted from Drakulich’s attorney’s fees and came directly out of Drakulich’s pocket. Additionally, Stellmach never saw any bills submitted by Hall for investigative services.
Hall’s testimony also fails to persuade me that Drakulich was not splitting fees with him. Hall rambled extensively in his testimony and had difficulty in answering questions. Although Hall denied referring clients to Drakulich for a fee, insisting that references were only because Drakulich was a family friend and a good attorney, I find that his testimony was largely unhelpful and unpersuasive in confirming Drakulich’s testimony.
Finally, I note my concern with the law relating to our review of bar matters. The law regarding bar matters is clear. “Though persuasive, the Board’s findings and recommendations are not binding on this court. This court must review the record de novo and exercise its independent judgment to determine whether and what type of discipline is warranted.” In re Stuhff, 108 Nev. 629, 633, 837 P.2d 853, 855 (1992). The panel was the body which actually observed the witnesses testify. I would, therefore, change the law to grant more deference to the disciplinary board, especially in the area of witness credibility. See, e.g., Matter of Arrick, 882 P.2d 943, 948 (Ariz. 1994) (“[o]n issues of witness credibility, we have held that it is proper for the commission and this court to defer to the hearing committee”). Because Drakulich disputed the testimony of his former secretaries, much of the board’s decision turned on witness credibility. The disciplinary panel, not this court, is the body best able to view the testimony of the various witnesses and assess their credibility.